# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

**HAMILTON T. MELVILLE,**

      **Plaintiff,**

**-vs-**                                                                       **Case No. 6:11-cv-94-Orl-DAB**

**COMMISSIONER OF SOCIAL SECURITY,**

      **Defendant.**

_____

## MEMORANDUM OPINION AND ORDER

This cause came on for consideration without oral argument on review of the Commissioner's denial of Plaintiff's application for social security disability insurance benefits and supplemental security income. For the reasons set forth herein, the decision of the Commissioner is **REVERSED and the matter is REMANDED** for further proceedings, consistent with this opinion.

## Procedural History

Plaintiff filed an application for a period of disability, disability insurance, and Supplemental Security Income benefits in November 2004 (R. 84-86, 497-99). The applications were denied initially and upon reconsideration, and Plaintiff requested and received a hearing before an Administrative Law Judge ("the ALJ") (R. 34-44, 49-51, 54-55, 56, 507-09 and 510-535). The ALJ issued an unfavorable decision on August 3, 2006 (R. 19-31), and Plaintiff requested review from the Appeals Council (R. 18). On October 13, 2006, the Appeals Council denied the request (R. 14-16), and Plaintiff petitioned this Court for review. *Hamilton Melville v. Commissioner of Social Security,* Case No. 6:07-cv-720-DAB. By Order dated February 28, 2008, the Court reversed the

administrative decision and remanded the matter to the Commissioner, for further consideration (R. 577-86).

Upon remand, another administrative hearing was held and, on March 17, 2009, a different Administrative Law Judge issued an unfavorable decision (R. 543-55). On November 29, 2010, the Appeals Council declined to assume jurisdiction, making the 2009 decision of the ALJ the final decision of the Commissioner (R. 536-38). The instant Complaint timely followed (Doc. No. 1), and the parties have briefed the issues, consented to the jurisdiction of the United States Magistrate Judge, and waived oral argument. The matter is now ripe for review.

## **Nature of Claimed Disability**

Plaintiff alleges that he became disabled in August 2004, due to "neck, back, IBS[1] and mental health" issues, specifically depression (R. 110). In addition to the pain and residuals from these conditions, Plaintiff asserts that he has dyslexia and headaches and that he has difficulty reading, writing and concentrating. *Id.* Since remand, Plaintiff asserts that his condition has worsened (R. 724) and he alleges a new impairment of significant arthritis of the feet with bilateral hallux rigidus (R. 670).[2]

*Summary of the Evidence*

At the time of the ALJ's decision, Plaintiff was forty-eight years old, with a college education, and past relevant work history as a compiler, cashier, server or waiter, bartender, cable installer, and a public relations representative (R. 121-46, 721, 730-31).

---

[1] Irritable Bowel Syndrome.

[2] Hallux rigidus is "painful flexion deformity of the great toe in which there is limitation of motion at the metatarsophalangeal joint." Dorland's Illustrated Medical Dictionary 829 (31st ed. 2007)

The medical evidence is set forth in the ALJ's decision and, in the interests of privacy and brevity, will be stated here only to the extent necessary to address Plaintiff's objections. In addition to the medical records of the treating providers, the record includes testimony at the administrative hearings, written forms and reports, and opinions from examining and non-examining consultants. By way of summary, the ALJ determined that Plaintiff had severe impairments of binocular dysfunction, cervical disc disease with radiculopathy, hepatitis, peptic ulcer disease, irritable bowel syndrome, bipolar disorder, dyslexia, alcohol dependence, major depressive disorder, lumbar disc disease with radiculopathy, and arthritis of the feet with hallux rigidus (R. 546, Finding no. 3), and the record supports this uncontested finding. The ALJ determined that claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1525, 404.1526,416.925 and 416.926) (R. 546, Finding No. 4) and determined that Plaintiff retains the residual functional capacity ("RFC") to perform medium work as defined in 20 CFR 404.1567(c) and 416.967(c). (R. 547, Finding No. 5). The ALJ stated:

> He can lift and carry 25# frequently and 50# occasionally. He can sit, stand and walk 6 hours in an 8 hour day. He has no limitations in his ability to push-pull with hand or foot controls. He has no manipulative, communicative, environmental or postural limitations, except that he is limited to occasional stooping and crouching. His psychological impairments, including his learning disorder produce only moderate limitations with social functioning, maintaining concentration, persistence or pace and the activities of daily living. In addition, the claimant has a visual dysfunction and wears reading glasses with prismatic correction for any reading or close up work. He can hear, understand, remember and carry out simple routine work instructions, and has only moderate limitations in his ability to interact appropriately with the general public, co-workers, and supervisors.

*Id.*

In what appears to be an error, the ALJ found that Plaintiff was both "unable to perform his past relevant work" *and* "capable of returning to all of his past relevant work" (R. 553). Nonetheless, relying on the testimony from a vocational expert ("VE"), the ALJ found Plaintiff could perform other

-3-

jobs in the national economy consistent with his RFC (R. 553-54, Finding no. 10), and was, therefore, not under a disability (R. 554, Finding no. 11).

## Standard of Review

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standards, *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the findings are supported by substantial evidence, *Richardson v. Perales*, 402 U.S. 389, 390 (1971). The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla – *i.e.,* the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995), *citing Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) and *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

"If the Commissioner's decision is supported by substantial evidence, this Court must affirm, even if the proof preponderates against it." *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n. 8 (11th Cir. 2004). "We may not decide facts anew, reweigh the evidence, or substitute our judgment for that of the [Commissioner.]" 357 F.3d at 1240 n. 8 (internal quotation and citation omitted); *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005). The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote*, 67 F.3d at 1560; *accord, Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (court must scrutinize the entire record to determine reasonableness of factual findings).

## Issues and Analysis

Plaintiff raises three issues, contending that: 1) the ALJ erred in determining that the claimant has the residual functional capacity to perform medium work with additional non-exertional

limitations, "after failing to adequately consider the opinion of the examining consultative physician and fail[ing] to consider all of the evidence in the record;" 2) the ALJ improperly relied on the testimony of the Vocational Expert after posing a hypothetical question that did not adequately reflect the limitations of the claimant; and 3) the ALJ erred by improperly evaluating the non-exertional impairment of pain. The Court finds the first objection to be well taken and dispositive of this matter.

*The Five Step Evaluation*

The ALJ must follow five steps in evaluating a claim of disability. *See* 20 C.F.R. §§ 404.1520, 416.920. First, if a claimant is working at a substantial gainful activity, he is not disabled. 29 C.F.R. § 404.1520(b). Second, if a claimant does not have any impairment or combination of impairments which significantly limit her physical or mental ability to do basic work activities, then he does not have a severe impairment and is not disabled. 20 C.F.R. § 404.1520(c). Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, he is disabled. 20 C.F.R. § 404.1520(d). Fourth, if a claimant's impairments do not prevent him from doing past relevant work, he is not disabled. 20 C.F.R. § 404.1520(e). Fifth, if a claimant's impairments (considering residual functional capacity, age, education, and past work) prevent him from doing other work that exists in the national economy, then he is disabled. 20 C.F.R. § 404.1520(f). The plaintiff bears the burden of persuasion through Step 4, while at Step 5 the burden shifts to the Commissioner. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987).

Initially, as noted above, the ALJ determined at step four that Plaintiff could *and* could not return to his past relevant work (R. 553). If the analysis had concluded at this step, remand would be warranted for clarification. As the ALJ continued the analysis through the fifth step, however, and as the Court finds that the formulation of the RFC at step three of the analysis requires remand in any event, the error is of no moment here.

*The RFC and evaluation of the medical evidence*

Plaintiff contends that the ALJ erred in formulating the RFC by failing to adequately evaluate the medical opinions and in failing to consider all of the evidence.[3] Plaintiff claims that he became disabled after an automobile accident on August 14, 2004 (R. 351). Plaintiff presented to a chiropractor following the accident (R. 351-55) and a pain and rehabilitation physician (Dr. Umpierre) (R. 408-10). During the initial examination, Dr. Umpierre noted tenderness throughout the left cervical paraspinals, left intrascapular musculature, L4-S1 paravertebral facet musculature and in the midline from L4 to S1, as well as positive straight leg raising with increased discomfort on the left side of the back. Dr. Umpierre diagnosed cervical sprain/strain and lumbar sprain/strain. (R. 410).

On October 12, 2004, Plaintiff underwent MRI examination of the lumbar and cervical spine (R. 400-402). The MRI of the lumbar spine revealed retrolisthesis at L4-5 and grade I spondylolisthesis at L5-S1, disk bulging at T12-L1, L4-5 and L5-S1, most severe at L5-S1 with a radial tear at L4-L5 and neural encroachment at L5-S1. The cervical MRI revealed post-surgical changes[4] following an anterior cervical fusion from C5-C7, disk disease at C3-4, C4-5, C5-6, C7-T1, most severe at C4-5 and neural encroachment from C3-4 through C7-T1. Dr. Umpierre assessed Plaintiff with L4-5 disk annular tear, bulge, and lumbar radiculitis; S/P lumbar and cervical sprain/strain; S/P cervical fusion; old C6-T1 radiculopathy; and right leg neuropathy (R. 389).

On return visits to his chiropractor and pain specialist, Plaintiff continued to complain of significant pain and was treated with injections, various pain medications, massage therapy, adjustments, and other non-surgical modalities, all with little reported success. He also complained

---

[3]In his brief, Plaintiff raises this issue but focuses on the evidence with respect to Plaintiff's mental impairments and the evaluation of consulting psychologists. As set forth herein, the Court finds other examples that are more compelling to illustrate Plaintiff's objection.

[4] In August 2000, well before the date of onset, Plaintiff underwent surgery to address cervical disk disease (R. 224-28).

-6-

of depression, and was treated with anti-depressants (R. 389-390, 393). On April 5, 2005, Plaintiff presented to Dr. Umpierre indicating that he had back pain rated as a 10 out of 10 (R. 387). Examination revealed "a lot of restriction [of] motion with antalgic gait." At that time, Plaintiff was assessed by his treating physician as "unable to work." *Id.*

On January 1, 2005, Plaintiff was hospitalized for evaluation of an apparent suicide attempt, after making cuts on his arm (R. 249-264).[5] Plaintiff was diagnosed with Major Depressive Disorder, with a Global Assessment of Functioning of fifty, indicative of moderate symptoms (R. 257). He was referred to Lakeside Alternatives for further treatment, and presented there with a history of manic episodes, depression, suicide attempts and alcohol addiction (R. 462-63). Assessment was Bipolar I Disorder Most Recent Episode Depressed; alcohol dependence; substance abuse, history of mental illness; with a Global Assessment of Functioning of 50. *Id.* Treatment included a variety of medications.

Plaintiff underwent a consultative examination at the request of the administration at Access Behavioral Care Associates (R. 265-267). On mental status evaluation, Plaintiff's mood was depressed with broad affect, speech was logical and coherent, judgment, impulse control, and insight were rated as poor, and mild to moderate problems in short term memory functioning were noted. Diagnosis was Major Depressive Disorder, recurrent, moderate, without psychotic features. Additionally, Dr. Austin opined that Plaintiff had poor social functioning, and his functional ability was impaired based on his significant depression and frequent fatigue.

Plaintiff also underwent a physical examination by a consultative physician (R. 268-70). On examination, muscle strength and grip strength were normal and straight leg raising was negative. There was reduced range of motion of the thoracolumbar spine, full in all other joints. It was felt

---

[5]There is some indication that this incident was not a suicide attempt but, in fact, an accident (R. 260).

-7-

Plaintiff would have difficulty in strenuous activities, particularly climbing stairs or ladders and repetitive stooping and squatting.

The record includes evidence with respect to Plaintiff's vision difficulties. In a report from his optometrist dated October 5, 2005, Plaintiff was noted to have a "lack of ability to converge at the near point," and "demonstrated very poor binocular reserves at the near point." (R. 469). Thus, his optometrist opined that Plaintiff would have difficulties in his ability to perform any type of "close work" or tasks involving reading.

Plaintiff was evaluated by orthopaedic surgeon Richard Smith on January 31, 2006 (R. 472-475). On examination, motor and sensory examination were normal, he was tender to palpitation, there was reduced range of motion, but no weakness. Another MRI was performed on March 27, 2006, revealing Grade I spondylolisthesis at L5-S1 with anterolisthesis of L5 over S1 and moderate degenerative disk disease at L5-S1 with associated reactive end plate marrow changes (R. 480). The MRI of the cervical region also showed moderate degenerative disk disease at C4-5 with mild central canal stenosis and mild foraminal narrowing bilaterally (R. 478). His surgeon recommended conservative treatment continue (R. 491-2).

On July 19, 2006, Dr. Klonel, the chiropractor, completed a physical capacities evaluation indicating that Mr. Melville could lift up to fifteen pounds occasionally, walk and sit a total of two to four hours each, but could only perform these for thirty minutes without interruption (R. 494-95). Furthermore, Dr. Klonel opined that Mr. Melville could never climb, balance, stoop, crouch, kneel or crawl.

The medical records post-remand show Plaintiff continued to complain of pain and was being treated with Percocet and other medications for pain control (R. 715). On March 6, 2007, treating physician Dr. Diaz completed a Disability Certificate that noted that Plaintiff was taking daily chronic

pain medication that "affect [his] ability to concentrate." (R. 709). Plaintiff returned to Dr. Diaz on October 3, 2007, for treatment of his residual back pain (R. 685). Dr. Diaz noted that Plaintiff had "plateaued with conservative treatment," "was awaiting social security" and "hopefully would be able to undergo" the recommended surgery. *Id.* Plaintiff was noted to be experiencing similar symptoms as before and was taking the pain medications, and "at this point he has not been able to return to work." (R. 687).

On May 1, 2008, Plaintiff was referred by Dr. Diaz to James Cottom, D.P.M. for evaluation of "severe arthrosis as well as hallux rigidus." (R. 672). Plaintiff complained of significant pain and stated that he was unable to walk. Physical examination and x rays revealed extensive arthrosis bilaterally and asymmetrical joint space narrowing (R. 673). Assessment recognized the chronic pain in both feet and it was noted that Plaintiff was in "late stage arthritic process" and would likely need surgery in the future (R. 674). On July 21, 2008, Plaintiff returned, complaining of pain (R 671). A cortisone injection was administered, but Dr. Cottom indicated that Plaintiff "had an endstage deformity and this may not do much for him." *Id.* It was again noted that Plaintiff would need an arthrodesis to be performed at some time.

On August 7, 2008, Plaintiff was prescribed a wheelchair and crutches (R. 669). On August 25, 2008, Plaintiff returned to Dr. Diaz for follow-up (R. 715). It was noted that Plaintiff had been using the crutches to "offload" with respect to his bilateral feet issues and would likely need surgery. As for "chronic back pain," it was noted that Plaintiff was "waiting for some settlement for possible surgery." *Id.* The plan was to continue treating with pain medications as needed "for now." *Id.*

Against this significant history of a variety of conditions, the ALJ nonetheless determined that Plaintiff had the RFC for medium work, and noted these exertional limitations: "He can lift and carry 25# frequently and 50# occasionally. He can sit, stand and walk 6 hours in an 8 hour day. He has no

-9-

limitations in his ability to push-pull with hand or foot controls. He has no manipulative, communicative, environmental or postural limitations, except that he is limited to occasional stooping and crouching." (R. 547). This finding cannot be affirmed.

Generally speaking, substantial weight must be given to the opinion, diagnosis and medical evidence of a treating physician unless there is good cause to do otherwise. *See Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997); *Edwards v. Sullivan*, 937 F.2d 580, 583 (11th Cir. 1991); 20 C.F.R. § 404.1527(d). If a treating physician's opinion on the nature and severity of a claimant's impairments is well-supported by medically acceptable clinical and laboratory diagnostic techniques, and is not inconsistent with the other substantial evidence in the record, the ALJ must give it controlling weight. 20 C.F.R. § 404.1527(d)(2). The ALJ may discount a treating physician's opinion or report regarding an inability to work if it is unsupported by objective medical evidence or is wholly conclusory. *See Edwards*, 937 F.2d 580 (ALJ properly discounted treating physician's report where the physician was unsure of the accuracy of his findings and statements.)

Where a treating physician has merely made conclusory statements, the ALJ may afford them such weight as is supported by clinical or laboratory findings and other consistent evidence of a claimant's impairments. *See Wheeler v. Heckler*, 784 F.2d 1073, 1075 (11th Cir. 1986); *see also Schnorr v. Bowen*, 816 F.2d 578, 582 (11th Cir. 1987). When a treating physician's opinion does not warrant *controlling* weight, the ALJ must nevertheless weigh the medical opinion based on the 1) length of the treatment relationship and the frequency of examination; 2) the nature and extent of the treatment relationship; 3) the medical evidence supporting the opinion; 4) consistency with the record as a whole; 5) specialization in the medical issues at issue; 6) other factors which tend to support or contradict the opinion. 20 C.F.R. § 404.1527(d).

In *Winschel v. Commissioner of Social Security*, 631 F.3d 1176, 1178–79 (11th Cir. 2011), the Eleventh Circuit held that whenever a physician offers a statement reflecting judgments about the nature and severity of a claimant's impairments, including symptoms, diagnosis, and prognosis, what the claimant can still do despite his or her impairments, and the claimant's physical and mental restrictions, the statement is an opinion requiring the ALJ to state with particularity the weight given to it and the reasons therefor. *Id*. (citing 20 CRF §§ 404.1527(a)(2), 416.927(a)(2); *Sharfarz v. Bowen*, 825 F.2d 278, 279 (11th Cir. 1987).

Here, in addition to his neck and back pain, vision difficulties and mental health issues, Plaintiff's treating physicians prescribed a wheelchair and crutches regarding Plaintiff's end stage deformity with *both* feet. His treating providers were clear that the pain and limitations were significant and surgery was inevitable. These treatment notes, including the need for crutches and the wheelchair, are statements reflecting judgments about the nature and severity of Plaintiff's impairment, and yet the ALJ failed to consider this and state the weight given to it. Clearly, if Plaintiff requires a wheelchair or crutches to ambulate he has, in fact, a postural limitation (that might also impact his ability to operate foot controls), and likely cannot perform the standing and walking components of medium work.

A review of the ALJ's opinion shows that Dr. Cottom was not the only treating physician whose opinions were not properly evaluated. The ALJ did not weigh the opinions of any of the treating physicians,[6] preferring to credit state agency consultants and examiners instead. Unlike treating physicians' opinions, however, non-treating examining doctors' opinions are not entitled to special deference. *McSwain v. Bowen*, 814 F.2d 617, 619 (11th Cir.1987). Moreover, as a general

---

[6]The ALJ did weigh the opinion of Plaintiff's chiropractor – a non-physician. The ALJ gave that opinion "just minimal weight" because chiropractors are not considered to be an acceptable medical source (R.551). Interestingly, however, the ALJ relied on this same opinion as evidence to discount Plaintiff's complaints of pain and limitations (R. 552). The ALJ cannot both accept the opinion, when it serves the ALJ's purposes, and reject it, when it does not. This, too, is error.

rule, a treating physician's opinion is normally entitled to more weight than a consulting physician's opinion. *See Wilson v. Heckler*, 734 F.2d 513, 518 (11th Cir. 1984); *see also* 20 C.F.R. § 404.1527(d)(2). This is especially so where, as here, the opinions given great weight by the ALJ are all from 2005, *before* the additional diagnosis of the bilateral foot issues (R. 549-550). Remand for full consideration of the treating physicians opinions, and all other opinions that meet the *Winschel* definition, is required.[7]

Because the ALJ failed to adequately evaluate all of the medical opinions of record, the additional objections raised by Plaintiff are moot. The Court does note, however, that Plaintiff's arguments with respect to the misapplication of the pain standard here are well taken. As remand is required to properly evaluate all of the medical opinions, the ALJ should look again at the totality of the combined effects of Plaintiff's impairments in evaluating his complaints of pain.

## Conclusion

The decision of the Commissioner is not supported by substantial evidence and was not made in accordance with proper legal standards. As the administrative decision was not made in accordance with proper legal standards, it is **REVERSED and the matter is REMANDED** under

---

[7]Although Plaintiff asks for reversal and the award of benefits, the Court notes that the failure to adequately evaluate all of the opinions of the treating providers no longer requires the Court to accept the opinion as true. *See Lawton v. Commissioner of Soc. Sec.,* 431 Fed. Appx. 830, 835 (11th Cir. 2011). As the Eleventh Circuit recently noted:

> We recognize that in *MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir.1986), this Court concluded that the Commissioner must accept as true a treating physician's opinion if the Commissioner ignored or failed to properly refute it. Our earlier precedent, however, remanded cases in which the ALJ failed to adequately explain the weight given doctors' opinions. *See, e.g., Broughton v. Heckler*, 776 F.2d 960, 962 (11th Cir.1985); *Wiggins v. Schweiker*, 679 F.2d 1387, 1390 (11th Cir.1982). To the extent *MacGregor* is inconsistent, under the prior panel precedent rule, we are bound by the holding of the first panel to address an issue of law, unless and until it is overruled by this Court sitting en banc or the Supreme Court. *United States v. Steele*, 147 F.3d 1316, 1318 (11th Cir.1986) (en banc). Thus, rather than accept the ignored treating doctor's opinion as true and remand for the award of benefits, we remand to the agency to determine in the first instance the proper weight to be afforded the treating doctor's opinion.

*Dempsey v. Commissioner of Social Sec.*, No. 11-11434, 2011 WL 6032952, *4 (11th Cir. Dec. 5, 2011) (as an unpublished opinion of the Eleventh Circuit, *Dempsey* constitutes persuasive, and not binding, authority. *See* 11th Cir. R. 36-2 and I.O.P. 6.)

sentence four of 42 U.S.C. § 405(g), with instructions to fully evaluate, consider and explain the weight given to each of the medical opinions; more fully evaluate the complaints of pain; and conduct any additional proceedings deemed appropriate. **The Clerk is directed to enter judgment accordingly, and close the file.**

**DONE** and **ORDERED** in Orlando, Florida on February 24, 2012.

*David A. Baker*

DAVID A. BAKER
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Counsel of Record